UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY EARLENE MATHEWS,

 Plaintiff,         Civil Action No. 16-12586

   v.          District Judge Sean F. Cox
            Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

 Defendant.
_____/

# REPORT AND RECOMMENDATION

 Plaintiff Tracy Earlene Mathews ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging Defendant Commissioner's ("Defendant's") denial of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #21] be GRANTED, and that Plaintiff's Motions for Summary Judgment [Docket #15, Docket #29] be DENIED.[1]

---

[1] Plaintiff's August 7, 2017 filing is also titled "Motion for Summary Judgment" which states her condition has worsened since the July 13, 2015 administrative decision. *Docket #29.*

## PROCEDURAL HISTORY

On November 27, 2013 Plaintiff applied for SSI, alleging disability as of November 5, 2013 (Tr. 147). Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on March 24, 2015 (Tr. 32). Administrative Law Judge ("ALJ") Patrick MacLean presided. Plaintiff, represented by attorney Madelyn Olcasek, testified (Tr. 38-67), as did Vocational Expert ("VE") Pauline McEachin (Tr. 68-70). On July 13, 2015, ALJ MacLean found that Plaintiff was not disabled (Tr. 12-23). On June 29, 2016, the Appeals Council denied review (Tr. 1-4). Plaintiff filed the present action on July 11, 2016.

## BACKGROUND FACTS

Plaintiff, born January 29, 1964, was 51 at the time of the administrative determination (Tr. 23, 147). She completed college and worked previously as a teacher and educational consultant (Tr. 172). She alleges disability due to diabetes, hypertension, brain tumors, osteoarthritis of the neck and back, thyroid tumors, costochondritis, and other medical conditions (Tr. 171).

### A. Plaintiff's Testimony

*Plaintiff's counsel prefaced her client's testimony by noting allegations of "chronic back pain, hip pain, and knee pain owing to osteoarthritis" as well as hyperhidrosis of the feet, diabetes with neuropathy of the feet, an adjustment disorder, and a mood disorder* (Tr. 36-37).

Plaintiff then offered the following testimony:

She held an Associates Degree from Wayne County Community College; a Bachelor's Degree from Wayne State University in Journalism and Political Science; and a Master's Degree in Business from the University of Phoenix (Tr. 38). Following the alleged onset of disability, she was evicted from her home in Detroit and now lived in subsidized housing (Tr. 39). Between the time of her eviction and her current placement, she lived with either friends or in a shelter between three and four months (Tr. 39). She now prepared "raw food" for breakfast to combat the conditions of diabetes, hypertension, and high cholesterol (Tr. 41). She was able to keep up with housekeeping chores in her small apartment (Tr. 42). She got a ride to a Laundromat around once a month and got a ride, took a bus, or walked to a nearby grocery store (Tr. 42). She held a valid driver's license but did not have access to a car (Tr. 42-43). She took a bus about twice a week, primarily to go to the library to use a computer to look for part-time jobs (Tr. 43). She walked approximately four blocks to catch a bus (Tr. 44).

Due to financial limitations and body pain, Plaintiff's leisure activities were limited to watching television and reading (Tr. 45). Headaches resulting from a head injury prevented her from reading for long periods (Tr. 45). She attended church or Bible study on a regular basis (Tr. 46). The condition of hyperhidrosis made her feet hot and sweaty, requiring her to put her feet in cold water on occasion (Tr. 49). She also experienced diabetic neuropathy of the feet and the condition of flat feet (Tr. 50). She took Tylenol and Naproxen

for pain (Tr. 50). She had been prescribed Gabapentin but experienced the side effect of drowsiness (Tr. 51).

Due to osteoarthritis of the neck, back, and hips, Plaintiff generally changed positions after sitting, standing, or walking for 15 to 20 minutes (Tr. 52-53). She did not require the use of a cane (Tr. 54). She took Trileptal for the mental health conditions (Tr. 55). The Trileptal improved her condition intermittently (Tr. 55). She reported the overall effect of grogginess from her medications (Tr. 55). She had been seeing a nurse practitioner for the mental health conditions for around 10 months (Tr. 56). She had recently applied for a clerical position at a local hospital and was interested in working part-time (Tr. 56). She was unable to read for more than 15 minutes at a time due to headaches (Tr. 57). She used the library computer twice a week for both job searches and other internet searches (Tr. 59). She got along "okay" with others (Tr. 60).

In response to questioning by her attorney, Plaintiff reported that she obtained good results from chiropractic treatment but that the frequency of treatment was compromised by financial constraints (Tr. 60). In addition to the above discussed medical and psychological conditions, Plaintiff experienced rashes periodically on her chest, arms, and legs (Tr. 61-62).

**B. Medical Evidence**

### 1. Records Related to Plaintiff's Treatment

In April and May, 2013, chiropractor David Sandler, D.C. treated Plaintiff for "neck [and] mid and lower back pain and stiffness" (Tr. 214). Plaintiff reported good results from

treatment (Tr. 214-218). In May, 2013, podiatrist David S. Ungar, D.P.M. noted that Plaintiff's "chief complaint" was "generalized pain in arches and ankles" (Tr. 213). He gave her a "good" prognosis (Tr. 213). Plaintiff reported good results from orthotic devices (Tr. 256, 264). Notes from the next month by the Wayne State University Physician Group note diagnoses of hypertension, asthma (resolved), hyperlipidemia, pituitary problems, upper back surgery for a lipoma, and migraine headaches (Tr. 220). The following month, Plaintiff sought treatment for hyperhidrosis and a rash (Tr. 251-252). She reported anxiety due to financial stressors and occasional pelvic pain due to fibroids (Tr. 495, 497). September, 2013 records state that she experienced "chronic back and neck pain without red flag symptoms" for which she was unable to see a physical therapist due to insurance limitations (Tr. 489-490). Treating records state that she had been prescribed exercises but failed to perform them regularly (Tr. 490). She had previously been prescribed Naproxen based on her report musculoskeletal pain (Tr. 490). Notes from the following month state that the "chronic back pain" was "under control with home exercise program" (Tr. 484). In December, 2013, Plaintiff sought emergency treatment for a headache after being "pistol whipped" during the course of a robbery (Tr. 225). She did not exhibit disorientation, double vision, weakness, hearing loss, seizures, neck pain, or nausea (Tr. 225, 228). Plaintiff noted a medical history of hypertension, diabetes, and dermatitis (Tr. 225). A CT was unremarkable (Tr. 230-231).

January, 2014 records note an elevated white blood count (Tr. 298). Plaintiff reported that she was otherwise feeling well (Tr. 298). She reported a history of diabetes as well as osteoarthritis of the spine and neck (Tr. 299). A March, 2014 eye exam was unremarkable (Tr. 457). Dr. Ungar's May, 2014 records note Plaintiff's report of depression, hypertension, diabetes, and prior foot surgery (Tr. 254). A mammogram was negative for malignancy (Tr. 526). May, 2014 records also state that she declined a recommendation to use corn starch for hyperhidrosis and instead asked for an anti-fungal medication for the condition (Tr. 480).

The same month, Plaintiff sought psychological counseling, reporting depression and anxiety (Tr. 400). Treating records note that she was in "a temporary stable living situation . . ." (Tr. 384, 400). She denied hallucinations or problems with the law (Tr. 400). Intake staff noted the condition of depression, an adjustment disorder, economic problems, personality issues, and housing problems (Tr. 399). Plaintiff appeared fully oriented and denied suicidal or homicidal thoughts (Tr. 395). She reported that she over-eats when anxious (Tr. 392). She denied previous mental health treatment and declined an offer of therapy services (Tr. 390-91). She reported that she was looking for part-time work (Tr. 386). She predicted that her mental condition would be improved when she was able to "get [her] life back [] financially" (Tr. 374).

Dr. Sandler's records from the following month note Plaintiff's report of level "seven to eight" (on a scale of one to ten) cervical, thoracic, and lumbar spine pain (Tr. 267-270, 278). The same month, Plaintiff sought emergency treatment for headaches (Tr. 306). She

reported that they occurred intermittently since the December, 2013 assault (Tr. 306). Emergency room records note a normal range of motion and strength (Tr. 307). She appeared fully oriented with no cognitive or neurological defects but showed elevated blood sugar levels (Tr. 308). In June and July, 2014, Plaintiff reported varying levels of cervical and thoracic pain (Tr. 286, 316, 318). Case management records note good hygiene but indicate that Plaintiff was fixated on the December, 2013 assault and finding permanent living arrangements (Tr. 362). She denied medication side effects (Tr. 361). She was assigned a GAF of 55 due to a mood disorder, and economic, occupational, and housing problems[2] (Tr. 352). She reported that she was looking for subsidized housing online, by phone, and in person and was also attending job interviews (Tr. 332, 343). She was advised to devote one hour a week to seeking employment (Tr. 337). July, 2014 physical treatment records do not include osteoarthritis among the "problem list" conditions (Tr. 415). September, 2014 records by psychiatrist Satish Cham, M.D. state that Plaintiff declined psychotropic medication (Tr. 383). Plaintiff exhibited a goal-directed thought process (Tr. 379). The same records note Plaintiff's report of a history of hypertension, diabetes, and osteoporosis (Tr. 382). In November, 2014, she was treated for a suspected rash (Tr. 530). She denied back pain (Tr. 530). In December, 2014, Dr. Unger noted Plaintiff's report of "pins and needles" foot pain (Tr. 324). An April, 2015 colonoscopy was positive for polyps but was otherwise

---

[2]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders–Text Revision* ("*DSM–IV–TR*"), 34.

unremarkable (Tr. 538, 541).

## 2. Non-Treating Records

In April, 2014, Cynthia Shelby-Lane, M.D. performed a consultative physical examination, noting Plaintiff's report of "diabetes, hypertension, hyperhidrosis, brain tumors, osteoarthritis of the back, neck and spine, thyroid tumors and costochondritis" (Tr. 232). Plaintiff reported numbness of the hands and feet (Tr. 232). Dr. Shelby-Lane noted Plaintiff's allegations of "problems with standing, stooping, squatting, lifting, bending and climbing stairs" (Tr. 233). Dr. Shelby-Lane observed that Plaintiff could get on and off the examining table slowly and walk with a normal but slow gait (Tr. 234). Dr. Shelby-Lane noted a normal range of neck motion; a mildly reduced flexion of the lumbar spine; and a moderately reduced forward flexion of the hip (Tr. 236). Dr. Shelby-Lane found that Plaintiff could perform a full range of exertional or postural activity, albeit at a slow pace (Tr. 238).

In an accompanying assessment, Dr. Shelby-Lane found that Plaintiff could lift up to 20 pounds on an occasional basis; stand or walk for up to five hours in an eight-hour workday; and sit for up to six (Tr. 241). She found that Plaintiff was capable of frequent upper extremity activity, work with foot controls and could occasionally balance, stoop, kneel, crouch, crawl, and climb stairs or ramps (Tr. 242). Dr. Shelby-Lane precluded all climbing of ladders or scaffolds (Tr. 242-243). She found that Plaintiff could be exposed to environmental hazards on an occasional basis but was precluded from all work at unprotected

heights (Tr. 244).

In February, 2014, Sonia Ramirez-Jacobs, M.D. performed a non-examining assessment of the treating and consultative records on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for more than six hours in an eight-hour workday; and push and pull without limitation (Tr. 78). Dr. Ramirez did not find additional limitations, citing Plaintiff's ability to perform household chores, the absence of neurological symptoms, and a normal gait (Tr. 78-79).

**C. Vocational Expert Testimony**

VE Pauline McEachin classified Plaintiff's past relevant work as a data entry operator as semiskilled and sedentary and work as an administrative assistant, semiskilled/light[3] (Tr. 67). The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, education, and past relevant work:

> [A]ssume a person . . . . [w]ho is able to lift up to 20 pounds occasionally, lift and carry up to 10 pounds frequently; do light work as defined by the regulations; occasionally climb ladders, ropes or scaffolds; occasionally climb ramps or stairs, balance, stoop, crouch, kneel and crawl; due to her mental health conditions, work is limited to simple, routine, and repetitive tasks; with

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

only occasional interaction with the public and co-workers. Can an individual with these limitations perform claimant's past relevant work as claimant performed it or as customarily performed? (Tr. 68).

The VE testified that given the limitation to unskilled work, the hypothetical individual would be unable to perform Plaintiff's past relevant work but could perform the unskilled, light exertional work of a general office clerk (250,000 in the national economy); inspector (180,000); and packager (130,000) (Tr. 69). She testified that if the same individual were additionally limited by being off task for more than 20 percent of an eight-hour workday, no competitive employment would be available (Tr. 69). The VE stated that her job testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*"), adding that her testimony pertaining to being "off task" was based on her own professional experience (Tr. 70).

### D. The ALJ's Decision

Citing the medical transcript, the ALJ found that Plaintiff experienced the severe impairments of "hyperhidrosis, plantar fasciitis (bilateral feet), arthralgia (bilateral feet), major depressive disorder, and adjustment disorder" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). He determined that Plaintiff experienced only mild limitation in activities of daily living and social functioning but moderate limitation in concentration, persistence, or pace (Tr. 16). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following non-exertional limitations:

> [O]ccasionally climb ladders, ropes, scaffolds, ramps, and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. Due to her mental health conditions, work is limited to simple, routine, and repetitive tasks with only occasional interaction with the public and co-workers (Tr. 17).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform her past relevant work, she could perform the jobs of general office clerk, inspector, and packager (Tr. 22, 69).

The ALJ discounted Plaintiff's allegations of disability (Tr. 18-19). He noted that Plaintiff had not been hospitalized for mental health conditions and testified that she got along "okay" with other people (Tr. 18). The ALJ observed that while the treating records showed some degree of depression, Plaintiff appeared fully oriented (Tr. 19). He noted that as of October, 2013, Plaintiff did not exhibit anxiety or depressive symptoms (Tr. 19). The ALJ cited June, 2014 psychiatric evaluation records noting good grooming, normal concentration, and full orientation (Tr. 19). As to the foot conditions, the ALJ noted that Plaintiff obtained good results from orthotic footwear and anti-itch medication (Tr. 18). He noted that upon consultative examination, Plaintiff did not exhibit skin rashes or ulcers (Tr. 18). While Plaintiff was observed walking slowly, she exhibited good balance (Tr. 18). He observed that as of May, 2014, she was non-compliant with recommendations to "wear socks and use cornstarch for her foot condition (Tr. 19). He noted Dr. Shelby-Lane's finding Plaintiff could sit for four to six hours and stand or walk for three to five hours in an eight-hour workday but declined to adopt the consultative examiner's full degree of exertional limitation or the finding that Plaintiff experienced manipulative limitations (Tr. 20-21).

-11-

The ALJ found that Plaintiff's regular activities undermined the allegations of disability. He noted that she was able to prepare meals, clean, do laundry, grocery shop, and go to the library regularly (Tr. 20). The ALJ found that Plaintiff's anxiety and depression appeared to be attributable to "her economic condition and being homeless" (Tr. 20).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATION

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Osteoarthritis of the Neck and Spine

Plaintiff argues that the ALJ erred by omitting the condition of osteoarthritis of the neck and spine from the "severe" impairments at Step Two of the administrative analysis. *Plaintiff's Brief,* 2-3, *Docket #15,* Pg ID 594 (*citing* Tr. 14). She contends that the osteoarthritis diagnosis is supported by chiropractor Dr. Sandler's records, a physician's

referral for physical therapy, and her own testimony. *Id.* at 3.[4]

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir.1985). An impairment can be considered "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.' " *Id.,* 773 F.2d at 90 (*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)). A non-severe impairment is defined as one that does not "significantly limit [the] physical or mental ability

---

[4]

Plaintiff also expresses concern "that her identity may have been compromised" because the original transcript (later struck) in this case erroneously contained the name and Social Security number of another individual. *Plaintiff's Brief* at 3. She notes further that her own Social Security number "is posted in plain view" in the current transcript. *Id.*; *see Docket #20.* Under Fed. R. Civ. P. 5.2(b)(2), the administrative record is exempt the redaction requirements generally required for personal information included in court filings. However, the administrative records is accessible to only the parties and attorneys in this case. *See* Rule 5.2(c)(1).

Plaintiff also takes issue with the ALJ's finding that she had thyroid tumors, arguing that in fact, she had a pituitary tumor. *Plaintiff's Brief* at 3 (*citing* Tr. 18). However, as noted by Defendant, *see Defendant's Brief,* 14, *Docket #21,* Pg ID 1174, Plaintiff's application alleges disability from thyroid tumors (Tr. 171) and the medical records include mention of the thyroid condition and previous treatment for the condition (Tr. 77, 232, 235). The medical records making reference to the pituitary gland condition indicate that the condition had been stable since a diagnosis years earlier and had not required treatment (Tr. 434, 455).

Finally, while Plaintiff faults the ALJ for stating that she took "Trilithium," *Plaintiff's Brief* at 3, it appears that in the context of the discussion that he was referring to "Trileptal," as indicated by Plaintiff's testimony and medical records (Tr. 18, 55, 206, 382). Plaintiff has not shown how the ALJ's misspelling of the prescribed medication, with nothing more, materially impacts the non-disability determination.

to do basic work activities." 20 C.F.R. § 404.1521(a).

The exclusion of osteoarthritis of the neck and back at Step Two of the administrative analysis does not warrant a remand for further fact-finding. To be sure, the transcript documents Plaintiff's allegations of osteoarthritis. Plaintiff testified that "body pain" limited her leisure activities (Tr. 45). She later stated that she was unable to remain in one position more than 20 minutes due to osteoarthritis of the neck, back, and hips (Tr. 52-53). Plaintiff received chiropractic treatment for mid and lower back pain at least as early as April, 2013 (Tr. 214). She complained of back and neck pain again in September, 2013 (Tr. 489-490). She reported a history of osteoarthritis of the neck and spine in January, 2014 (Tr. 299). In June, 2014, Plaintiff reported level "seven to eight" cervical, thoracic, and lumbar pain (Tr. 267-270, 278).

However, the treating records also support the conclusion that Plaintiff experienced at most intermittent symptoms of neck and back pain. June, 2013 treating records do not include a diagnosis of osteoarthritis (Tr. 220). While Plaintiff reported chronic back and neck pain in September, 2013, she did not exhibit "red flag symptoms" (Tr. 489-490). Plaintiff claims that she was unable to see a physical therapist for the neck and spine condition due to financial constraints. However, she sought and received treatment and/or testing for a plethora of other health complaints between 2013 and 2015 notwithstanding her economic problems. Her claim that the osteoarthritis caused some degree of work limitation is also undermined by the September, 2013 treating records indicating that Plaintiff was non-

compliant with recommendations for home exercise (Tr. 490). Records from the following month state that the pain was "under control" after she complied with the treating recommendations (Tr. 484). In January, 2014, she reported "feeling well" despite a history of neck and back pain (Tr. 298-299). June, 2014 emergency room records note a normal range of motion and strength (Tr. 307). The following month, she omitted osteoarthritis from a list of "problem" conditions (Tr. 415). In February, 2014, non-examining source Dr. Ramirez-Jacobs acknowledged Plaintiff's allegations of osteoarthritis but noted that the claims of work-related limitation were undermined by normal range of motion studies, gait, and muscle tone (Tr. 76-77). My own review of the transcript indicates that the allegations of significant limitation resulting from osteoarthritis are not supported by even one imaging study.

Further, even assuming that the evidence overwhelmingly pointed to the conclusion the neck and back condition was a "severe" impairment, the omission does not provide grounds for remand. An ALJ's failure to acknowledge an impairment at Step Two is harmless error provided that it is addressed at the remaining steps of the sequential analysis. *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir.1987); *Fisk v. Astrue,* 253 Fed.Appx. 580, 583-584, 2007 WL 3325869, *4 (6th Cir. November 9, 2007). While the ALJ did not mention osteoarthritis at Step Two, he acknowledged Plaintiff's allegations of "osteoarthritis in the back, neck, and spine" (Tr. 17). He noted that despite her allegations, she had no problem with personal care, prepared meals, cleaned, did laundry,

shopped, and went to the library regularly to "research and apply online for employment" (Tr. 15, 17-18, 20). Dr. Ramirez-Jacob's finding that Plaintiff could lift 20 pounds occasionally and 10 frequently despite the allegations of osteoarthritis constitutes substantial evidence in support of the RFC (Tr. 16-17, 79). Moreover, while Dr. Ramirez declined to finding *any* postural limitation in her non-examining assessment, the ALJ limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 17). Because the ALJ took into account the allegations of osteoarthritis at the later steps of his analysis, the exclusion of osteoarthritis from the Step Two impairments does not warrant a remand.

**B. Plaintiff's Medical Condition Subsequent to July 13, 2015 [Docket #29]**

In Plaintiff's second "Motion for Summary Judgment," dated August 2, 2017, she states that she "recently" experienced the growth of the pituitary gland tumor. *Docket #29,* 2, Pg ID 1195. She states further that "a recent MRI" showed "a bone spur on the neck . . . with a possibility of a pinched nerve . . ." *Id.* She also reports sharp left shoulder, arm, hand, and finger pain since sustaining injuries in a December 16, 2016 accident. *Id.* She states that she was diagnosed with "beginning cataracts" in February, 2017 and with glaucoma the following month. *Id.* at 3.

The sixth sentence of 42 U.S.C. § 405(g), pertaining to evidence submitted after the administrative decision, states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate

such evidence into the record in a prior proceeding ..." To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).

The earliest of the "newer" records post-dates the administrative decision by over one year. Plaintiff's condition subsequent to the date of the ALJ's decision, such as the alleged injuries resulting from a December, 2016 accident, or, the MRI from the same month are intrinsically irrelevant to whether she was disabled on or before July 13, 2015. *Sizemore*, 865 F.2d at 712. If Plaintiff believes that her condition has worsened since the July, 2015 administrative determination, her remedy is to make a new application for benefits. *Id.*

In conclusion, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's prior housing problems or legitimate health concerns. Nevertheless, the ALJ's determination that Plaintiff was not disabled as of July 13, 2015 is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and as such, should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #21] be GRANTED, and that Plaintiff's Motions for Summary Judgment [Docket #15, Docket #29] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: November 28, 2017

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 28, 2017, electronically and/or by U.S. mail.

           s/Carolyn M. Ciesla
           Case Manager to the
           Honorable R. Steven Whalen